of the way. Please, counsel for appellant, make your appearance and proceed. Good morning, your honors, and may it please the court. Amelia DeGore is pro bono counsel for petitioner. With the court's permission, I'd like to reserve three minutes of my time for rebuttal. This is a case about basic fairness in immigration proceedings. The government did not turn square corners here. The government had in its possession from its own detention facility records showing that Diana is transgender, was being housed by the government in a transgender housing unit, and was receiving gender-affirming medical treatment. Yet it told the immigration judge just the opposite. Reopening is required for Diana to submit this undisputedly material evidence. Reversal and remand is also required to remedy clear error in the adverse credibility determination which held Diana's timing in coming out against her and is otherwise unreasonable and unsupportable. Starting with the motion to reopen, the BIA legally err- Well, you've started focusing on the transgender issue. The BIA found as a independent, sufficient ground to deny the withholding of removal that there was an adverse credibility finding on gang affiliation. Did it not? The BIA said that that was dispositive for the withholding of removal. However, it's not reasonable to uphold an adverse credibility determination based on transgender identity, based on purported gang affiliation. Those are two separate issues at the BIA reference. Well, they are two separate issues, and that's the point. If the BIA found that one issue, gang affiliation, to be dispositive, why does it matter whatever failings and lack of squaring the corners that the government did relative to the transgender identity issue? Why is it even relevant? Because, Your Honor, the potential gang affiliation credibility determination is as to credibility determination. It's not an independent, sufficient basis just to deny withholding. It's going to why or why not the credibility determination can stand. Why is it not? I mean, the BIA said multiple times that this was a sufficient ground, I believe, to deny relief. And why is it, as a matter of law, not a sufficient ground to deny relief? Your Honor, respectfully, the BIA said that it's a sufficient reason to uphold the credibility determination. The credibility determination is as to Diana's ability to present her case that she is transgender and fears harm on that basis. If the evidence, the only evidence that was presented at that hearing essentially relied on her testimony, and if her testimony was found to be incredible, then why would that not be a sufficient basis in and of itself as a matter of law? And if there's some authority that says, to the contrary, now's the time to give it to me, but why, as a matter of law, would that not be a sufficient basis to deny relief? Because the credibility determination has to be based on the totality of the circumstances. It cannot be, excuse me, it has to be based on specific, cogent reasons for disbelieving the testimony and supported by substantial evidence and substantially reasonable. So it would not be substantially reasonable to deny relief on the basis that Diana is transgender based on her credibility as to a completely different issue. Why not? If her testimony about being transgender and that being a cause of concern for withholding a removal is found to be, if she's found to be a liar, and there's substantial evidence to support that, the BIA referenced authority, which says that on issues essentially, well, that in and of itself would say that why do I have to believe you on the transgender issue if I think you're a liar on the other issue? Because the BIA itself recognized that these are two different issues, and if Your Honor looks at the BIA's decision in denying the motion to reopen, it recognized that these are two separate issues and that Diana's credibility as to her transgender identity is standing alone, so it's not affected by her credibility as to her potential gang affiliation. It would not be substantively reasonable to find, based on a single factor, that she was not credible as to her transgender identity if the court concludes that there is not a sufficient basis to uphold the adverse credibility determination as to her transgender identity, and there isn't here, because the BIA based that credibility determination solely on the fact that Diana and her mother had not identified her as transgender in 2017, seven years before her proceedings in this case. I'm looking at page 440 of the record, and the BIA says there, however, under the REAL ID Act, an immigration judge may base an adverse credibility determination on any inaccuracies or falsehoods in the applicant's statements without regard to whether they go to the heart of the applicant's claim. And so the point which you've made, and I accept, is that transgender identity and gang affiliation are two separate things, but that does not, it seems to me, refute the notion that if the person offering the testimony regarding both issues has been deemed to be a liar on one issue, and I'm just referencing what the finding would be of lack of credibility, if the person is deemed to be a liar on one issue, why could the BIA not say, well, why couldn't the IJ and why couldn't the BIA uphold the fact that you don't trust that person on anything? That's, why isn't that the law? I mean, that's a law in other contexts. It would seem to me that that could be the law in this context. A fact finder could say, I don't trust you, and therefore, whatever you're going to say on transgender identity, I'm just not going to believe it. But here, the BIA did make a holding as to credibility on transgender identity, and that holding cannot be sustained strictly by a credibility finding as to gang affiliation. There is clear error in that holding regardless for the reasons that we've explained in our brief that Diana does not have the tattoo that the immigration judge and the BIA claimed that she did have, and so that alone is not supported by substantial evidence. And the statute itself says that a credibility determination must be based on a totality of the circumstances, can't be affirmed based on a single factor when that factor is unsupportable, as we have shown that it is, because there is not substantial evidence to support a potential, there's not  Why is that the case? I mean, the notion that Diana was a fan of Friday the 13th, and therefore, that supports why she has the tattoo, why couldn't the BIA, why couldn't the IJ and then the BIA after that find that just to be fanciful and therefore implausible and therefore incredible? Why is that, what makes sense, what is not reasonable about that line of reasoning? Your Honor, the BIA did not uphold the IJ's determination on that basis. The BIA said that the IJ permissibly concluded that the applicant's M13 and Locos tattoos were an indication of gang affiliation, and the applicant's testimony to the contrary was not credible. Counsel, you make a lot in your brief about an M13 tattoo versus just a 13 tattoo. Who introduced the letter M? Who was the first person to mention the letter M? Your Honor, Diana was the first person to mention the letter M, but she did not say that she has an M13 tattoo. She did not say that she has an M tattoo. DHS, the DHS attorney is the one who introduced that falsehood into the record, and so the credibility determination She said that 13 could stand for a number of different things, various things, and she said, for example, it's the 13th letter, it could reference M for Mexico. What is her connection to Mexico, if any? Your Honor, there's no indication in the record that there's a connection to Mexico. She was But she's the one that said that, right? She explained that 13, that different tattoos have different meanings to different people, and that, for instance, M is the 13th letter of the alphabet, so 13 could be standing in for Mexico as opposed to something different. That is not, again, the basis on which the BIA upheld the IJA's credibility determination. The BIA was relying on the idea that Diana has an M13 tattoo, which she does not have. So substantial evidence does not support that determination, and at minimum, Diana should be permitted to reopen the proceedings to present the evidence that she does not have an M13 tattoo, and this was a falsehood introduced by DHS. Counsel, could I just ask you, I'm looking at the BIA decision, and it talks about the adverse credibility determination on gang affiliation, and said that that alone is dispositive on withholding of removal. Then the BIA turned to the Convention Against Torture request, relief based on CAT, and says that the adverse credibility finding on transgender seemed to be the basis to uphold the CAT determination. Do you read the BIA as, I understand the colloquy between you and Chief Justice Holmes about an adverse credibility determination on one point applying to the rest, but didn't the BIA separate out withholding of removal in CAT and affirm on different credibility determinations? Your Honor, admittedly, the BIA's decision is not very clear on this point, but I do agree that the basis for the finding on CAT was adverse credibility determination as to being a transgender woman, and whether or not that she was able to establish that she would more likely than not suffer torture if returned to El Salvador. So I do think that the BIA can be read to have separated these two issues and not considered the gang affiliation. It's dispositive of her application for withholding of removal, but in either event, it would not be reasonable to uphold the BIA's determination based on credibility as to the gang affiliation. Well, looking at page 442, it appears that as it relates to the CAT determination, that the BIA also said that even if it could be assumed that she would be tortured by virtue of her transgender status, there was no basis to believe that that would have been with the consent of any public authority. And I didn't see any argument in your brief about the consent issue, and why isn't that in itself an independent basis to find that CAT relief would not be available? Because Your Honor, in the BIA's later decision, it clarifies that the only thing standing in Diana's way in terms of receiving relief under either form of relief is the adverse credibility determination as to whether she's transgender. These are two different orders. I mean, let me know the basis for bleeding those two orders together in terms of the rationale. I mean, this order stands on its own. This order has been appealed on its own. And should not it stand or fall based upon the reasoning that's in the order? Your Honor, these proceedings are consolidated by statute, and the agency has clarified in its later order what is the basis for holding against her in the earlier order. So this court can consider that the BIA, the agency itself, clarified its reasoning in the earlier order when it said that she has made out a prima facie case for relief. The only thing that was holding her back from that was the adverse credibility determination. And as a matter of the government's own evidence, medical records indicating that DHS itself was providing her medical treatment while in a DHS detention facility and housing her in a transgender housing unit, that she had made out a prima facie case for relief. And what is the basis for that when the evidence that the whole point of the reopening proceeding is that you were presenting things that you didn't present in the other proceeding? And So how can we judge the merits of the CAT determination in the, well, in the initial proceeding by bleeding in stuff in terms of whether she made a prima facie case that existed in the reopening proceeding? I mean, how does that make sense? Your Honor, it's not whether she was able to present evidence in the reopening proceeding that should bleed into the adverse credibility determination. No, I'm talking about the, I'm talking about the, specifically, I'm talking about the CAT determination and the BIA's statement that irrespective of whether she made out her case on being transgender and that that would cause some, that she would be tortured as a consequence, that there was no basis to believe that that would be with the consent or acquiescence of the government. And is that not an independent ground to deny CAT relief? Your Honor, there's a conclusory statement in the, in that later opinion that confuses the grounds on which she presented her basis for CAT relief. I see my time has expired, so I will just point Your Honor to the case site in our brief that the BIA can clarify its later decision making and show that its reasoning in the earlier order should be vacated. I will give you a little rebuttal time. Thank you, Your Honor. Could I just ask you one more question?  I think this builds a little bit on what the Chief was asking you, but one of your arguments is that we should remand because the BIA didn't address a bias and unfairness argument, correct? That's correct, Your Honor. In addressing this, may this Court consider the motion to reopen fairness arguments and record given that the appeals are consolidated? The... I mean, I'll give you a for instance. I mean, you're arguing that she didn't have the medical records, but DHS counsel cross-examined, tried to impeach her on transgender identity, but at the same time, the records, DHS had the records. I think that's the gist of your argument. Can we take that into account in addressing your request for remand for a bias fairness determination as to the initial April 2024 hearing? I think Your Honor could instruct the BIA to consider Diana's bias and fairness claim in the first instance. I'm looking more for some authority that would allow us to do that. Are you aware of any? Well, Your Honor, the Mikita-Chute case requires a remand if the BIA hasn't considered something, and so if this Court concludes that the BIA... Well, that isn't my question. My question is, can the record in... There's two appeals, they're consolidated. Can we consider the record in appeal number two in considering any of the issues in appeal number one? Your Honor, I think that the statute consolidates them. I'm not aware of authority giving the Court permission to consider completely separate record evidence in the second appeal in order to decide the first appeal. However, the Court can instruct the agency to consider Diana's bias claim in the first instance based on the record that's before the agency. Thank you, Your Honors. May it please the Court, Anna Juarez for the respondent, Attorney General. Petitioner had the burden to establish a credible and persuasive claim for protection from removal. She failed to meet that burden and now further fails to identify record evidence compelling that she established a credible claim for protection. Petitioner also bore a heavy burden to establish that reopening was warranted, but failed to meet that burden as well. Well, why don't you take a crack at answering Judge Matheson's question? Are you aware of any authority that would allow us to consider the record in the motion for reopening in determining whether it would be appropriate to grant remand on fairness grounds in case number one, given that there was some notion that the government had the evidence that would have supported the transgender claim and was sitting on it and, nevertheless, impeached Diana at the time? Yes, Your Honor. In the consolidated case, generally the court can look at the whole record. However, I think it needs to look at what was before the agency at each step. Before the agency in the first step, there was just no evidence that she was getting gender-affirming care. She didn't bring it up. It was her third time in removal proceedings. She claimed she was detained in pro se and did not have access to records, but no one was requiring her to access her detention records. She brought up for the first time before this court that DHS had a duty to submit those records. However, there's just no indication in the record that the trial attorney, essentially a prosecutor, would have access to her personal medical records in detention without being notified of some in some way. Well, being notified by whom? By her. I mean, she had an opportunity. She was questioned thoroughly about her claim. She filed her own declaration about her claim. Well, you used the word prosecutor, and so let me try to engraft a concept on here. Why would it not be the case that the prosecutor in this instance, on what would have been material to the claim of transgender identity, would not have had to inquire whether there was any record of gender-affirming care? Because that would have been something that would determine whether she should get relief or not, right? Correct, and I'll retract the prosecutor analogy. She had the burden to prove her claim at every step of the way. It was her burden. Even being detained in pro se, it's her burden to establish it. The transcript shows that the IJ did question at length. DHS had no burden. Did the IJ ask anything about the treatment? The IJ did not ask the specific question, you know, have you received hormone therapy? And all of the arguments about duty to develop, I mean, they kind of come down, in this case, to that one specific question. Could I just ask, maybe backing up and looking at this big picture, do you agree now that Ms. Munoz-Ramirez is transgender? The government doesn't dispute that. All right. And there were records in the file on April 4, 2024, that she was getting treatment for being transgender? There weren't, not necessarily in the record. DHS, the detention center, had those medical records. There's no indication they would be in a trial attorney's. No, I understand. But at this point, we know they were there. Yes, they existed. And they're in the record now? They're in the record now. All right. So have you considered conceding that she was transgender on April 4, 2024? Even if she is, and we are conceding she was receiving that gender-affirming care, as your Honor pointed out earlier, she's still not credible. There were still reasons. The court can accept that she is transgender. Well, we're just on the gender identity credibility determination. I mean, how is that not clearly erroneous, given what is known now? She still had the burden in both of the cases. She wasn't credible. She wasn't credible for independent reasons. I'm not talking about the other reasons right now. We're just talking about gender identity. Yeah, and for the motion to be opened... Isn't that credibility determination, looking at it broadly, clearly erroneous? Just the transgender... Yes. It... As the board said in its second decision, it was material to that one specific issue. I didn't ask whether it's material. I just asked, is it clearly erroneous? Looking back now, I mean, we've got records that she was getting treatment before the hearing. The board... She said she told the IJ she was transgender. She was getting treatment. Records now confirm it. Now, I understand about records from the one appeal and the records from the other appeal, but as a practical matter, how can that credibility determination be correct? Well, at that time, there were no records before the board when they made that decision regarding... So, arguably, that was not clearly erroneous at that time. So, the government, in the face of clear documented evidence that she was transgender on April 4, is not willing to say that that credibility determination was clearly erroneous. Is that your argument? Not at that time, but the government also... I know. We're talking about now. Yes, what the agency had before it at that time was not clearly erroneous. I mean, why wouldn't it make sense to have it go back in light of everything that's happened? And that would be a matter of the motion to reopen. I mean, any evidence could come out after an agency decision. She's also arguing that the IJ hearing was biased and unfair and the BIA didn't even address it. So, aren't we required to send that back? That also was specifically with the transgender claim. The BIA did not... The BIA majority decision did not address it. They did in the dissent. The record shows that the IJ gave a full hearing to show bias. But is that something we can decide? Can we go back and look at the IJ hearing and say, oh, it wasn't unfair or biased? Or is that something that the agency needs to decide? It's just as a matter of basic administrative law. A couple of different responses to that. Generally, procedural due process, the agency needs to look at first. The overall constitutional questions are de novo. And I think in this case, it doesn't... Because it goes to transgender, she's not claiming a duty to develop the record regarding all of these inconsistent claims. It's really just the transgender part of it. And she really is not disputing these other grounds of adverse credibility. And, you know, has no... She was given the opportunity to explain them. The BIA said we would find her adversely credible based on this dispositive ground, plus a few other grounds. And help me with this. I mean, if in fact, as I read the BIA decision, it was dispositive that she was not credible as it relates to gang affiliation, what difference does it make? I mean, on the motion to reopen, if in fact the issue is, is she carrying out her burden of proof and she is found to be incredible, why is that not a sufficient basis for the BIA to deny relief, period? And what I want to disaggregate here is a question of fairness and what should happen from whether, as a matter of law, the BIA was obligated to do anything else. That's a question. I agree, Your Honor. The board was very clear about that being a dispositive ground. It separated it from the transgender, which brings in all of the bias duty to develop. The board absolutely can deny based on that ground. As Your Honor noted previously, the statute says that it doesn't need to go to the heart of the claim. She's never actually denied or rejected the IJ's findings regarding the inconsistent testimony about why she got the tattoos. The only argument she's making now is she didn't even raise it to the agency that one of the three tattoos she doesn't have, there's a locos, a 13, and an M. She, as you pointed out, introduced the M. DHS followed up and said your M tattoo means Mexico. She said yes and then has not brought it up until the briefing before this court. And whether or not the M exists, there's plenty in the record that the court could uphold the adverse credibility finding based on that alone. Counsel, I have a question for you. So I understand it's the petitioner's burden, but I want to talk with you a little bit about the record that Judge Mathison inquired about. So there's a case that cited the matter of MAM, and it talks about DHS's obligation to provide the court with relevant materials in its possession regarding the respondent's mental capacity as a safeguard where the respondent's competency is at issue. We don't have that issue in this case, but we have an issue of whether she was transgender or not. What is the Attorney General's position on whether that case would support an obligation on behalf of DHS to provide whatever record it may have had, if it could have had some relevance at all? The matter of MAM and the mental incompetency, that comes into play when there's some indication before the IJ that an individual has mental competency issues and then DHS is tasked with helping find records. It really does not come into play here. No one has extended it to just other medical records. And again, if it was even analogous, there would have had been some indication before the IJ for the IJ to ask DHS to go. Are you aware of any authority that would say we should expand that decision to cover any and all records that could have any relevance at all beyond the mental competency issue? I'm not aware of that, no. Isn't that what the regulation says? It's CFR section 1242A. It says DHS counsel should present on behalf of the government evidence material to the issues of deportability or inadmissibility on any other issues that may require disposition. Why didn't that impose an obligation to disclose the medical records? I think in this case, DHS trial counsel didn't know it was something to disclose. Is there any duty to inquire or check the records? It would be one thing to say that in hindsight, but there's nothing in this record that indicates that that would be something to discover. In the motion to reopen, though, it suggests that maybe it's a little more than hindsight. That is, there were records, and yet DHS counsel presented it before the IJ as if there weren't any. Yes, Your Honor, and before the IJ, this was petitioner's third time in proceedings and the first time that she claimed to be transgender. And so it's not entirely unreasonable that DHS would not be or would be skeptical. Let me follow up on the regulation. Does the regulation impose a Brady-like obligation on DHS to present information that might be exculpatory? I mean, you know, there's one thing to say you should present things as the person trying to remove somebody. You should present things that are material to that removal. It's another thing to say you should search for records that might be material to proving that that person should not be removed. I mean, is there any sort of Brady-like obligation on DHS in these contexts? There is not, and Brady is applied in criminal proceedings. This is different. And just to be clear, what I'm talking about is the need to present exculpatory or information that might benefit, be favorable to the alien. Yeah, there's nothing in the statute of regulation that requires DHS to do that. It just requires that she has the burden. DHS did not have the burden in this case. We would argue that she did not meet her burden. I see my time is up, but I'm happy to answer any further questions. I mean, other than saying that she was transgendered at that time, did she say that she had received treatment? No, not during her proceedings. Thank you, Counsel. Thank you, Your Honors. A minute and a half. Thank you for the additional time, Your Honor. I'd like to pick up where the panel left off with my friend from the other side. The regulation imposes a duty on DHS to present material evidence, not any evidence that would be favorable to the applicant, but evidence that's material, as the BIA concluded that these medical records within the possession of the agency were material. And I'll pick up on Judge Heil's question. If she did not indicate that she was receiving treatment, why would the DHS person, counsel, even know that they were material? That would create a very different scenario. If she had said, look, you know, I've been getting treatment, and then the DHS counsel ignored that and acted like it didn't happen, we might be in a different situation. But that didn't happen, right? Stepping back here, Your Honor, DHS had to pick a lane. It affirmatively disputed before the IJ her transgender identity and accused her of lying. The DHS attorney didn't just say she hasn't met her burden and left it at that. It went beyond and said she's lying. Right, but that's a different answer. That's not the question. The question was, did the petitioner ever say that she had, beyond just being transgender, did she ever say, I'm actually receiving treatment? I have received treatment in your facility. Did she ever say that? No, because the IJ only asked her two questions regarding her transgender identity. When did you start identifying as transgender? And when you say you're transgender, what does that mean to you? I see my time has expired. I request that the Court grant the petitions and reverse and remand. Thank you. Thank you, counsel, for your fine arguments. The case is submitted.